UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREW G. M.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. C26-0419-SKV

ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits (DIB). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

**BACKGROUND**

Plaintiff was born in 1977, has a master's degree in food science, and has worked as a food technologist and hand packager. AR 55, 69. He performed substantial gainful activity (SGA) through 2017, *see, e.g.*, AR 122, 189, 230, and earned amounts at the SGA level in unsuccessful work attempts in 2022 and 2023, *see, e.g.*, AR 34, 40, 122-23, 185-86, 189.

On May 3, 2024, Plaintiff applied for benefits, alleging disability as of September 9, 2023, later amended to March 8, 2023. *See* AR 31. His date last insured for DIB is December

31, 2024. *See* AR 33. His application was denied initially and on reconsideration, and he requested a hearing. *See* AR 31. After the ALJ conducted a hearing on August 29, 2025, AR 50-73, the ALJ issued a decision finding Plaintiff not disabled, AR 31-44.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

> **Step one**: Plaintiff has not engaged in SGA since March 8, 2023.
>
> **Step two**: Plaintiff has the following severe impairments: chronic traumatic encephalopathy (CTE)/mild neurocognitive disorder, depressive disorder, anxiety disorder, attention deficit hyperactivity disorder (ADHD), and posttraumatic stress disorder.
>
> **Step three**: These impairments do not meet or equal the requirements of a listed impairment.[2]
>
> **Residual Functional Capacity (RFC)**: Plaintiff can perform a full range of work at all exertional levels, but with nonexertional limitations. He can understand, remember, and apply simple instructions, make simple work-related decisions, and sustain concentration, persistence, and pace to perform simple tasks. He can tolerate occasional interactions with supervisors, coworkers, and the general public in jobs that do not require tandem tasks, sales, customer service, or dispute resolution. He can deal with changes in a routine work setting occasionally.
>
> **Step four**: Plaintiff cannot perform past relevant work.
>
> **Step five**: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 31-44.

The Appeals Council denied Plaintiff's request for review, AR 1-6, making the ALJ's decision the Commissioner's final decision. Plaintiff appealed the final decision to this Court. Dkt. 1. The parties consented to proceed before the undersigned Magistrate Judge. Dkt. 3.

/ / /

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred in assessing his symptom testimony and medical opinions. The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

**A. The ALJ Did Not Err in Assessing Symptom Testimony**

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons to discount a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). An ALJ is not required to believe every allegation, *Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021), nor to analyze the claimant's testimony line by line, *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ here found Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the medical and other evidence of record. AR 37. Plaintiff had "not received the type of treatment indicative of disabling conditions" and the objective medical evidence was inconsistent with allegations of limitations greater than those provided for in the RFC. AR 39. His treatment had "largely been conservative in nature, consisting predominantly of routine follow-up type appointments, medication management, and a bout of [transcranial magnetic stimulation (TMS)] sessions." *Id.* The record was "remarkably silent of the extreme functional limitations alleged[,]" and instead shows "quite normal activities of daily living[,]" including: attending to his own personal needs and hygiene, as well as those of his children and pets; preparing meals and performing household chores and yard work; driving independently and going shopping; "has been brewing tea, does Tai Chi twice a week, meets with friends for coffee, attends AA meetings 7 days a week, engages in yoga, plays pickle ball, returned to playing poker"; and "took a family vacation to Puerto Vallarta, Mexico, traveled to Pennsylvania with family for the summer to spend time with extended family, and was looking forward to winter and skiing/snowboarding with his son." AR

39-40. Plaintiff's work activity after the alleged onset date, although not disqualifying SGA, indicated his "daily activities, at least at times, have been somewhat greater" than alleged, and the evidence did "not suggest" one of those jobs "ended due to his conditions." AR 40 (noting his testimony he left the job following contact with a headhunter). Examinations did not suggest more than moderate limitations. *Id*. (citing AR 528, 573-74, 619). And there was evidence of improvement and stability in symptoms with treatment, as shown by his report of significant benefit with TMS, his most recent neuropsychological evaluation suggesting stable neurocognitive functioning, and his endorsement of increased energy with treatment and mild symptoms of anxiety and depression with no signs of marked limitations on objective evaluation. *Id*. (citing AR 641-44).

The ALJ concluded that, overall, the evidence consisted primarily of documentation of Plaintiff's subjective complaints, "with little in the way of objective findings to support functional limitations as limited" as alleged. *Id*. Further, Plaintiff "received far less treatment than one would expect of someone experiencing" the limitations reported, and the ALJ found Plaintiff had limitations no greater than those assessed in the RFC considering the "objective evidence in light of [his] self-described activities of daily living and the record as a whole[.]" *Id*.

Plaintiff argues the ALJ erred in failing to specifically tie his reasoning to the testimony and "cherry picking" statements from providers. He also argues the ALJ improperly found his treatment conservative, his activities inconsistent with his alleged limitations, and his work activity to show greater activity than alleged, and that the ALJ ignored other factors pertinent to his persistent fatigue, such as his obstructive sleep apnea and sedating medications.

Contrary to Plaintiff's contention, the ALJ's findings were sufficiently specific and the path of his reasoning was clear. *See* AR 37-40. Nor does Plaintiff otherwise identify reversible

error. As described above, the ALJ provided a number of clear and convincing reasons for discounting Plaintiff's testimony as to the degree of his impairment. *See, e.g.*, *Smartt*, 53 F.4th at 497-99 ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases."); *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled[.]"); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (favorable response to conservative treatment properly considered); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

In assigning error, Plaintiff in large part offers a different interpretation of the evidence. However, the fact the ALJ "*could* have come to a different conclusion" in interpreting the record does not suffice to demonstrate error. *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2018) (emphasis in original). The ALJ here rationally construed the evidence and his conclusions have the support of substantial evidence. The ALJ's conclusions are, as such, properly upheld.

**B. The ALJ Did Not Err in Assessing Medical Opinions**

The ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. § 404.1520c(a)-(c). The "supportability" factor addresses the relevance of the objective evidence presented in support of an opinion, as well as the "supporting explanations" provided by the medical source. 20 C.F.R. § 404.1520c(c)(1). The "consistency" factor examines the consistency of the opinion with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). The more consistent an opinion is with that other evidence, the more persuasive it will be. *Id.* An ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Plaintiff asserts error in the ALJ's assessment of the opinions of State agency medical consultants Kent R., Ph.D, and Renee E., Ph.D., and Michael Rosenbloom, M.D.

1. *Kent R., Ph.D, and Renee E., Ph.D.*

Dr. R. opined Plaintiff could carry out simple instructions, maintain concentration, persistence, and pace for up to two hours continuously, and complete a normal workday/ workweek, but could not carry out more detailed tasks, could interact with the public on an occasional/superficial basis, could interact with supervisors and co-workers on a more frequent basis, adapt to normal, routine changes, respond appropriately to normal hazards, travel in unfamiliar places using public transportation or other modes of travel, and set goals and make plans independently. *See* AR 75-82. Dr. E. concurred with these findings, except that she found Plaintiff would not be able to set goals independently on a consistent basis, but would be able to understand and follow employer set goals. *See* AR 85-91. Both physicians opined Plaintiff had

no more than moderate limitations in the domains of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. *See* AR 80-82, 90-91.

The ALJ found these opinions persuasive. AR 36, 41. He found them supported by review of treatment records showing stability in neurocognitive functioning and improvement in depression and anxiety with treatment, consistent with examinations, and supported by detailed explanation, and that more recent records, including those submitted after their assessments and received at the hearing level, did not suggest further limitations were warranted. *Id.*

Plaintiff asserts the only explanation provided by the State agency physicians was a summary of medical evidence and generic statements. He asserts their failure to provide sufficient analysis or explanation regarding neuropsychological testing results, *see* AR 473-84, 554-67, and that those results are inconsistent with the moderate limitations they assessed.

Contrary to Plaintiff's contention, and as reflected in the ALJ's decision, *see* AR 35, 41, the State agency physicians provided sufficient explanation of their conclusions and sufficient analysis and explanation in regard to testing results and other evidence in the record. *See, e.g.,* AR 79 ("The [claimant's] employment picture is complex. It is impacted by several factors including a history of substance abuse, mood symptoms, anxiety, spending several years as a househusband, and ADHD. There are positive findings on PET scans, but negative findings on a brain MRI. The conclusions of the neuropsychological and neurological sources are that the [claimant] does suffer from CTE. Nevertheless, his intellectual abilities are still in the average range, and there is no neuropsych evidence of decline from last year's assessment. His mood and anxiety [symptoms] have improved significantly in the past year as seen in his scores on the recent BDI-II and BAI. Overall impression from the medical evidence is that the [claimant]

retains the ability to carry out simple tasks at the very least."). The ALJ also reasonably found the opinions of the State agency physicians consistent with the medical evidence of record, which the ALJ thoroughly discussed in his decision and which provides substantial evidence support for the ALJ's conclusion. *See* AR 37-41. Plaintiff, for these reasons, fails to identify error in the ALJ's assessment of this opinion evidence.

2. *Michael Rosenbloom, M.D.*

In a medical record dated June 3, 2025, Dr. Rosenbloom stated: "In my opinion, [Plaintiff] is no longer able to work due to this progressive cognitive and behavioral disorder." AR 726. The ALJ did not find this opinion persuasive. AR 41. He explained that the opinion was on an issue reserved to the Commissioner and provided no opinion of function-by-function limitations. *Id*. He also found the opinion was not entirely consistent with Dr. Rosenbloom's September 10, 2024, instructions that Plaintiff "'should remain physically, mentally, and socially active,'" and finding that Plaintiff "'has stable cognition based on [neuropsychological tests], which is reassuring; my impression is that [his] neuropsychiatric symptoms are well-managed.'" *Id*. (quoting AR 601 (also stating Plaintiff's anxiety, agitation, and mood improving with current regimen, medication had been helpful for anxiety, TMS improved mood by report, and would "consider repeat testing in 18-24 months" and "repeat TMS in a year if depression recurs.")).

Plaintiff rejects the ALJ's contention that Dr. Rosenbloom's treatment recommendation had any bearing on his actual functional capacity. He also denies any inconsistency between the September 2024 findings and Dr. Rosenbloom's subsequent statement.

Opinions that a claimant is disabled or unable to work are issues reserved for the Commissioner's determination. 20 C.F.R. § 404.1520b(c)(3). They are "inherently neither

valuable nor persuasive to the issue of whether" a claimant is disabled, and the ALJ need not provide any analysis about how such evidence is considered. *Id*.

The ALJ here accurately noted that Dr. Rosenbloom's statement did not offer a functional assessment and was instead an opinion on an issue reserved to the Commissioner. The ALJ nonetheless also reasonably found internal inconsistency between Dr. Rosenbloom's statement and his earlier recommendation and findings. The ALJ's interpretation is both rational and supported by substantial evidence. *See* AR 37-41, 600-07, 726; *see also* Dkt. 14 at 13-15 (also noting inconsistency between Dr. Rosenbloom's 2025 statement and an evaluation he subsequently ordered in 2025 and that was entered into evidence after the ALJ's decision) (citing AR 17-26 (October 27, 2025, testing results showed "stable if not improved and generally intact neurocognitive function."; "Taken together, information from the medical record, clinical interview and neurocognitive testing are most consistent with a diagnosis of largely normal neurocognitive function with some mild variability on measures of attention, concentration and processing speed. It must be noted that these are stable overtime [sic] with only 1 score now in the impaired range and a number of improvements compared to his prior evaluations.")). Plaintiff does not demonstrate any error in the ALJ's consideration of the evidence from Dr. Rosenbloom.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **AFFIRMED** and

/ / /

/ / /

/ / /

/ / /

this case is **DISMISSED** with prejudice.

Dated this 10th day of November, 2026.

S. KATE VAUGHAN
United States Magistrate Judge